**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHAEL E. RHOADS,**

      **Plaintiff,**

  v.                                     Civil Action 2:19-cv-5674
                                            Judge Sarah D. Morrison
                                            Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michael E. Rhoads, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed his applications for DIB and SSI on April 29, 2011, alleging that he was disabled beginning July 1, 2008, due to feet issues, back pain and inability "to read very well." (Tr. 209–22, 243). After his applications were denied initially and on reconsideration, the Administrative Law Judge ("ALJ") held a hearing on January 18, 2013. (Tr. 34–62). The ALJ denied benefits in a written decision on January 29, 2013. (Tr. 14–33). The Appeals Council denied Plaintiff's request for review, and Plaintiff appealed the ALJ's decision to this Court, which remanded his claims back to the Commissioner for further evaluation. (Tr. 664–66, 697–708). Upon remand, an ALJ issued a partially favorable decision finding Plaintiff disabled beginning July 17, 2014. (Tr. 717–34). The Appeals Council affirmed the favorable portion of the decision

but remanded the unfavorable portion to further consider Plaintiff's literacy. (Tr. 742–45). In February 2018, an ALJ again found Plaintiff not disabled prior to July 17, 2014. (Tr. 574–95). Following Plaintiff's written objections, the Appeals Council, on October 30, 2019, vacated the ALJ's February 2018 decision and issued a new decision finding Plaintiff not disabled prior to July 17, 2014. (Tr. 542–58, 879–82). The decision of the Appeals Council then became the final decision of the Commissioner. (Tr. 539).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 31, 2019 (Doc. 1), and the Commissioner filed the administrative record on April 27, 2020 (Doc. 7). This matter is now ripe for resolution. (*See* Docs. 10, 11).

### A. Relevant Hearing Testimony

Because Plaintiff's Statement of Errors pertains to his alleged illiteracy only, the Undersigned limits her discussion of the record to the same.

The Appeals Council summarized the testimony from Plaintiff's hearing:

> He reported he can count change, but can't read very well (Exhibit 9E). He testified he is able to drive, and recognizes street signs by shape, but also was able to spell the word "stop" during the hearing.
>
> The claimant's sister, Rosetta Williams, also testified at the hearing. She testified that she helps him fill out job applications because he is illiterate.

(Tr. 549).

### B. Relevant Medical Evidence

The Appeals Council then summarized Plaintiff's mental impairments:

> As far as mental impairments, the claimant was examined by consultative examiner Taylor Groneck, Psy.D. on August 6, 2011 (Exhibit 5F). Dr. Groneck noted the claimant's intelligence falls in the borderline range, and assessed a full scale IQ of 77 (Exhibit 5F, page 5). Dr. Groneck also diagnosed alcohol dependence (Exhibit 5F, page 9). Dr. Groneck opined the claimant would be able to follow simple instructions, but would have difficulty with multiple-step instructions. (Exhibit 5F, page 9). Persistence and pace were noted to be adequate, but concentration was

> impaired due to physical pain (Exhibit 5F, page 9). There is little other discussion of mental impairments in the medical records.

(Tr. 551).

### C. The Appeals Council's Decision

The Appeals Council first considered whether Plaintiff's mental impairments met or equaled a Listing under the Regulations. To begin, it assessed Plaintiff's limitations in understanding, remembering, or applying information and concluded that Plaintiff has "moderate" limitations. (Tr. 547). It explained:

> Consultative examiner Taylor Groneck, Psy.D. noted the claimant had difficulty understanding questions and vocabulary (Exhibit 5F, 5). Dr. Groneck also noted limited or marginally adequate short term and working memory (Exhibit 5F, pages 5 and 8). The claimant also had impaired judgment (Exhibit 5F, page 5). Dr. Groneck assessed a full scale IQ of 77 (Exhibit 5F, page 5). Ultimately, Dr. Groneck found the claimant was able to understand and follow simple instructions (Exhibit 5F, page 9).

(*Id.*). Next, the Appeals Council determined that Plaintiff has "moderate" limitations in his ability to interact with others, explaining:

> The claimant has been arrested multiple times for fighting (Exhibit 5F, pages 7 and 9). However, social judgment is consistently noted to be intact (Exhibits 7F, page 12; 10F, page 7; and 12F page 45). The claimant reported he is able to go out alone (Exhibit 5E, page 7). He also reported he gets along with authorities and has never lost a job due to difficulty getting along with others (Exhibit 5E, page 10).

(*Id.*).

As for Plaintiff's ability to concentrate, persist, or maintain pace, the Appeals Council found that Plaintiff has "moderate" limitations. (*Id.*). It elaborated:

> Dr. Groneck found the claimant's concentration was minimally adequate (Exhibit 5F, page 5). However, Dr. Groneck noted this limitation was based on pain from physical conditions (Exhibit 5F, 9). Dr. Groneck noted persistence and pace were adequate. (Exhibit 5F, page 9). The claimant reported he follows spoken instructions well (Exhibit 9E, page 9).

3

(*Id.*). Finally, the Appeals Council concluded that Plaintiff has "moderate" limitations in his ability to adapt or manage himself, explaining:

> Dr. Groneck noted dirty nails and body odor (Exhibit 5F, page 4). General reasoning abilities were limited (Exhibit 5F, page 5). However, records consistently note intact judgment and insight (Exhibits 7F, pages 5, 8, 12; 10F, page 7; and 12F, page 45). The claimant reported difficulties with self-care, but this was based on physical issues (Exhibits 5E, page 5; 9E, page 5). The claimant reported he uses a pill box to remember when to take medication (Exhibit 5E, page 6). He also reported he handles stress and changes "fair" (Exhibit 5E, page 10).

(Tr. 548). Because the Appeals Council found that Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, Plaintiff's mental impairments did not satisfy the "paragraph B" criteria. (*Id.*).

As for Plaintiff's residual functional capacity ("RFC"), the Appeals Council concluded that Plaintiff can:

> perform a range of light work as defined in 20 CFR 404.1567 and 416.967 except [he] can[not] climb ladders ropes, or scaffolds, [can] occasionally crawl, [can] frequently climb ramps and stairs, balance, stoop, kneel, and crouch. He [can] perform simple, routine, repetitive tasks, in an environment with infrequent changes in work duties or processes. He [can] occasionally interact with supervisors, coworkers, and the general public. He can[not] perform assembly line work or work with strict production quotas.

(Tr. 548–49).

Turning to the relevant opinion evidence, the Appeals Council first considered the earlier opinion from a state agency psychological consultant, who opined, at the initial level, that Plaintiff had moderate limitations, but did not provide specific work-related limitations. (Tr. 553). Upon reconsideration, the consultant affirmed the initial determination, and the Appeals Council afforded the opinion "moderate weight," explaining that is "partially consistent with a record as a whole" but that "significant evidence came in after these consultants reviewed the record." (*Id.*).

Next, the Appeals Council considered the August 2011 opinion of mental consultative

examiner, psychologist Taylor Groneck, who opined that Plaintiff can understand and follow most simple instructions but would likely have significant difficulty with multi-step instructions due to limited cognitive disabilities. (*Id.*). The Appeals Council afforded his opinion "moderate weight," explaining:

> Dr. Groneck is a psychologist, with knowledge in the evaluation, diagnosis, and treatment of mental conditions. Furthermore, the consultative examiner observed, interviewed, and evaluated the claimant in a clinical setting. Nonetheless, the consultative examiner has no treating relationship with the claimant. As such, the opinions offered are based solely on the documented examination findings at the time of contact and are not definitive assessments of the nature of claimant's impairments throughout the course of treatment. Consequently, the Appeals Council has not simply adopted the consultative examiner's opinions and remarks. The Appeals Council has instead, considered the consultative examiner's findings and statements in light of the record of evidence as a whole.
>
> As referenced in discussing the objective medical evidence of record, this source's opinions are partially consistent with the record as a whole. In support of this opinion, Dr. Groneck noted normal mood and affect, limited short term and working memory, marginally adequate arithmetic reasoning, limited general reasoning, and limited judgement (Exhibit 5F, page 5). He also performed intellectual testing, which resulted in a full scale IQ of 77, but verbal comprehension of 66 (Exhibit 5F, page 5). Further, these opinions demonstrate significantly supportability as the consultative examiner documented numerous medical facts and non-medical evidence in the record relied upon in formulating their conclusions. However, Dr. Groneck's finding that the claimant had only marginal attention and concentration is not supported, because it is based on an observation that the claimant was preoccupied with pain (Exhibit 5F, page 5). As a consultative examiner, Dr. Groneck only met with the claimant once, and therefore, had no way of knowing if that pain was ongoing, something unique to that day, or whether it might be adequately treated with proper medication. For the above reasons, the Appeals Council gives moderate weight to the opinions of the consultative examiner.

(Tr. 553–54).

Especially relevant here, the Appeals Council next considered Plaintiff's literacy and education level. It found, based on the record, that Plaintiff "has a limited education and is able to communicate in English." (Tr. 555). It elaborated:

> In his disability report, the claimant states he can read and understand English, and

5

can write more than his name in English (Exhibit 2E, page 1). He also states he completed the 12th grade in 1984 (Exhibit 2E, page 3). An administrator from his school stated that his transcript showed he did not graduate and was in all special education classes (Exhibit 27E, page 2). The claimant alleged that he could not read or write very well, but did not allege that he was illiterate (Exhibit 9E, page 9). The claimant testified that he can read traffic signs, and was able to spell the word "stop" (Hearing Recording, 9:52:25). The claimant testified that past work included that of a shift manager at White Castle, which included responsibility for safe deposits, suggesting at least some ability to perform basic reading and writing (Hearing Recording, 9:58:55). He further testified that the job also involved working on a cash register, again suggesting a basic ability to read. Evidence of record shows the claimant reported working at a factory where he ran an assembly line (Exhibit 20E). The claimant's high school records do not indicate he was completely incapable of reading and writing (*see, e.g.*, Exhibit 30E). The record suggests an ability to read and write to a degree sufficient to be considered at least literate under Agency standards (20 CFR 404.1564 and 416.964). The regulations state we consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his name. An illiterate person generally has little or no formal schooling. Given the record of the claimant's functioning, the evidence as a whole does not support finding the claimant illiterate under the agency's rule.

(Tr. 555–56).

Finally, the Appeals Council concluded—relying on testimony from the Vocational Expert ("VE")—that Plaintiff could perform the requirements of a hotel housekeeper, cafeteria attendant, and car wash attendant. (Tr. 557). Accordingly, the Appeals Council found that Plaintiff was not under a disability, as defined by the SSA, from July 1, 2008, through July 16, 2014. (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.   DISCUSSION

For his sole assignment of error, Plaintiff asserts that "the ALJ [] failed to properly consider whether [he] was illiterate." (Doc. 10 at 8). In so arguing, he emphasizes the Appeals Council's earlier instruction to consider Plaintiff's literacy. (*See, e.g.*, *id*. at 9 ("The ALJ blatantly disregarded the Appeals Council Order. . .")). But, as the Commissioner correctly notes, the Appeals Council subsequently vacated the ALJ's decision upon which Plaintiff's statement of errors is based and issued a new decision, which then became the final decision of the Commissioner. (Tr. 542–58, 879–82); *see also Harley v. Astrue*, No. 3:09CV-876-S, 2011 WL 1542112, at *4 (W.D. Ky. Apr. 22, 2011), *aff'd sub nom. Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802 (6th Cir. 2012) ("The Appeals Council vacated the ALJ's decision and rendered its own findings which constitute the Commissioner's Final Decision."). In other words, it is irrelevant whether the ALJ properly considered Plaintiff's literacy or the earlier directive from the Appeals Council. Rather, the Undersigned must decide whether substantial evidence supports the decision of the Appeals Council. *See, e.g.*, *Harley*, 2011 WL 1542112, at *4 (citations omitted)

("In reviewing the decision of the Appeals Council, the court is limited to determining whether the Appeals Council's controlling findings are supported by substantial evidence in the record; that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). And because Plaintiff did not file a reply brief addressing this oversight, the Undersigned liberally construes his argument as attacking the Appeals Council's determination that Plaintiff is not illiterate as defined by the Regulations.

Unlike the ALJ, who did not expressly opine on Plaintiff's literacy, the Appeals Council concluded, based on the totality of the evidence, that Plaintiff has a "limited education" but is not "illiterate." (Tr. 555–56). "Whether Plaintiff is literate is not an implicit finding, [] [but] [r]ather, [ ] a question of his educational level." *Helmker v. Comm'r of Soc. Sec.*, No. 1:14-CV-0902, 2015 WL 7721225, at *6 (W.D. Mich. Nov. 30, 2015). "'Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability.'" *Id*. (quoting 20 C.F.R. §§ 404.1564(a) and 416.964(a)). "The regulations define levels of education as illiteracy, marginal education, limited education, high school education and above, and the inability to communicate in English." *Helmker*, 2015 WL 7721225, at *6 (citing 20 C.F.R. §§ 404.1564(b) and 416.964(b)).

The Regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 416.964(b)(1). "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." *Id*. "The essential question is whether [plaintiff] is so deficient in ability to read and write that he cannot obtain even an

8

unskilled job." *Smith v. Comm'r of Soc. Sec.*, No. 13-12759, 2015 WL 899207, at *23 (E.D. Mich. Mar. 3, 2015) (alteration in original) (quotation marks and citation omitted).

Alternatively, a "limited education" is an "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through 11th grade level of formal education is a limited education." 20 C.F.R. § 416.964(b)(3). "In evaluating educational levels, the regulations recognize that [the] 'numerical grade level that you completed in school may not represent your actual educational abilities' which 'may be higher or lower.'" *Helmker*, 2015 WL 7721225, at *6 (quoting 20 C.F.R. §§ 404.1564(b) and 416.94(b)). As explained below, substantial evidence supports the Appeals Council's finding that Plaintiff has a "limited education."

To begin, the Appeals Council properly considered Plaintiff's educational records. It noted that, while Plaintiff indicated he completed the twelfth grade in 1984, an administrator from his school stated his transcript showed he did not graduate and was enrolled in all special education classes. (Tr. 555). *See* 20 C.F.R. § 416.964(b)(3) (noting that a seventh through eleventh grade of formal education is generally considered a limited education). But the Appeals Council did not rely solely on the numerical grade level Plaintiff completed. It relied also on Plaintiff's educational records, concluding that they did "not indicate he was completely incapable of reading and writing[,]" but rather reflected "an ability to read and write to a degree sufficient to be considered at least literate under Agency standards." (Tr. 556). Upon review of Plaintiff's cumulative student record, the Court notes that, while Plaintiff received failing grades in several classes, including English and Reading, he also received some passing grades in these classes. (*See* Tr. 948); *see also Inman v. Astrue*, No. CIV.A.08-16-JMH, 2009 WL 1663036, at *3 (E.D. Ky. June 15, 2009)

9

(internal citations omitted) ("Although Plaintiff did poorly in school and obtained low scores on achievement testing, his grades and scores do not establish that he was illiterate.").

Importantly, "[n]o examiner concluded Plaintiff was illiterate." *Inman*, 2009 WL 1663036, at *3; *cf. Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450 (6th Cir. 1990) (noting that the record was "replete with evidence that [plaintiff] [was] illiterate," including an opining source's diagnosis of illiteracy). Rather, the sole opining source on Plaintiff's intellectual abilities found that Plaintiff "appears [able] to follow most simple instructions" but would "have significant difficulty with multi-step instructions due to limited cognitive abilities." (Tr. 421). So the Appeals Council limited Plaintiff, accordingly, to simple, routine, repetitive tasks. *See, e.g.*, *Abrams v. Astrue*, 637 F. Supp. 2d 520, 526 (E.D. Ky. 2009) (noting psychologist's opinion that plaintiff, who had borderline intellectual functioning, a learning disorder, and read below the third grade level, would struggle with carrying out detailed instructions, but could understand and carry out simple instructions).

Relatedly, in reaching its ultimate decision, the Appeals Council relied on the VE's hearing testimony to conclude that Plaintiff could perform the requirements of the unskilled jobs of hotel housekeeper, cafeteria attendant, and car wash attendant. (Tr. 557). While the ALJ did not expressly determine whether Plaintiff was illiterate, he ensured the VE understood Plaintiff's limited ability to read and write. Specifically, at the hearing, the ALJ noted, in the presence of the VE, that Plaintiff's test scores showed that, in the tenth grade, Plaintiff read at the 1.5 grade level and spelled at the 2.4 grade level. (Tr. 613–14). Further, when questioning the VE, the ALJ emphasized these difficulties:

> Q. I also want you to keep in mind the fact that he - - although he has a high school diploma, you heard the testimony about the level of reading - -
> A. Yes.

>       Q. - - and writing skills? You've heard that testimony. I want you to consider that - -
>       A. Okay.

(Tr. 649–50). Relying on the VE's testimony, the Appeals Council concluded that Plaintiff could perform these unskilled jobs and limited him to simple, routine, repetitive tasks, in an environment with infrequent changes in work duties or processes. (Tr. 548–49).

Moreover, the Appeals Council noted that, in his disability report, Plaintiff stated he can read and understand English and can write more than his name in English. (Tr. 555). It also noted, while Plaintiff "alleged he could not read or write very well," he "did not allege that he was illiterate." (*Id.*). Plaintiff also "testified that he can read traffic signs, and was able to spell the word 'stop.'" (Tr. 555); *see, e.g.*, *Helmker*, 2015 WL 7721225, at *6 (noting that plaintiff could "read road signs," despite having "substantial difficulties in this area"). Additionally, Plaintiff's sister testified that he could read three and four-letter words. (Tr. 633).

Furthermore, despite Plaintiff's contention that his past jobs did not require him to read or write, (*see* Doc. 10 at 9), the Appeals Council properly took into account Plaintiff's work history in light of his ability to read and write. *See, e.g.*, *Watt*, 2016 WL 6651855, at *4 (collecting cases) (noting that the ALJ properly considered that plaintiff's "alleged reading and writing difficulties did not prevent him from" working as a grocery clerk and parts assembler at substantial gainful activity level); *Marrisett v. Colvin*, No. 2:14-CV-222, 2015 WL 3626995, at *2 (E.D. Tenn. June 10, 2015) (concluding that plaintiff was not illiterate where he "worked for many years in a variety of jobs"). Specifically, the Appeals Council noted that Plaintiff "testified that past work included that of a shift manager at White Castle, which included responsibility for safe deposits, suggesting at least some ability to perform basic reading and writing." (Tr. 556). Plaintiff "further testified that the job also involved working on a cash register, again suggesting a basic ability to read." (Tr.

11

556). Additionally, the Appeals Council noted that the "[e]vidence of record shows [Plaintiff] reported working at a factory where he ran an assembly line." (*Id.*).

Plaintiff, in his statement of errors, relies on evidence in the record, including his own testimony, purportedly showing he is illiterate. (*See, e.g.*, Doc. 10 at 9). And there certainly is evidence in the record that Plaintiff struggles to read and write. For example, as noted above, Plaintiff's reading, spelling, IQ, and achievement test scores are low, although educational records suggest that some of these low scores were at least partially attributable to "behavioral and self-esteem problems." (*See, e.g.*, Tr. 946). Also, as noted, there is evidence he attended special education classes. But there is also evidence he is at least functionally literate, including that he indicated on his disability form that can read and understand English and write more than his name, that he worked as a manager at White Castle, that he attended school at least until the twelfth grade, and that he received some passing scores in Reading and English classes. *See, e.g.*, *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 516 (6th Cir. 2011) (upholding ALJ's finding of "limited education" as opposed to "illiterate" despite evidence showing that plaintiff "had a second-grade reading level and was diagnosed with developmental reading disorder," emphasizing that "he successfully worked for many years" and attended school into the twelfth grade); *Williams v. Comm'r of Soc. Sec.*, No. 1:14-CV-387, 2015 WL 4077231, at *3 (W.D. Mich. July 6, 2015) (finding, despite plaintiff's hearing testimony that he cannot read or write, read a newspaper, perform simple math, or make change, that substantial evidence supported ALJ's finding that plaintiff was literate where plaintiff attended special education classes through twelfth grade and performed unskilled work in the past).

Where the "record contains evidence of both literacy and illiteracy," the Court must apply "the deferential standard of review" and conclude simply whether "the evidence is sufficient to

support the ALJ's [or Appeals Council's] conclusion that plaintiff was functionally literate." *Id*. In other words, whether the Appeals Council erred in failing to find that Plaintiff "so deficient in [his] ability to read and write that he cannot obtain even an unskilled job[.]" *Smith*, 2015 WL 899207, at *23. The Undersigned concludes that, while the Appeals Council could have reached a different conclusion, substantial evidence supports its finding that Plaintiff is not illiterate as defined by the Regulations. Again, "the standard here is whether the [Appeals Council's] decision is supported by substantial evidence—not whether evidence also supported an alternative finding." *Watt*, 2016 WL 6651855, at *5 (recognizing that plaintiff "correctly point[ed] out that the record contain[ed] evidence that he has trouble reading and writing" but that "substantial evidence support[ed] the ALJ's finding that [plaintiff] was not illiterate"); *see also Smith*, 2015 WL 899207, at *23 (finding that, despite plaintiff's very low reading levels, substantial evidence supported the ALJ's conclusion that plaintiff was not illiterate). Because substantial evidence supports the Appeals Council's conclusion, remand is not warranted.

IV. **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

V. **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or

13

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: September 15, 2020                    /s/ Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE