UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL RHOADS,

        Plaintiff,      :    Case No. 2:19-cv-5674

  - vs -                         Judge Sarah D. Morrison
                               Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF SOCIAL
SECURITY,
                               :

        Defendant.

## OPINION AND ORDER

Michael Rhoads ("Plaintiff") brings this action under 42 U.S.C. § 405(g) and § 1383(c) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance Benefits and Supplemental Security Income. This matter is before the Court on Plaintiff's Objection (ECF No. 14) to the Report and Recommendation ("R&R") issued by the United States Magistrate Judge on September 15, 2020 (ECF No. 13), recommending that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's decision. For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

1

I.      BACKGROUND

     A.      **Procedural History**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on April 11, 2011, alleging disability since July 1, 2008. (Admin. Record, 209–22, 243, ECF No. 7.) After Plaintiff's applications were denied initially and on reconsideration, Administrative Law Judge ("ALJ") Michael Hazel held a hearing and issued a written decision denying benefits on January 23, 2013. (*Id.* at 14–33, 34–62.) Upon the Appeals Council's denial of Plaintiff's request for review, Plaintiff appealed the ALJ's decision to this Court, which remanded his claims back to the Commissioner for further consideration. (*Id.* at 664–66, 696–708.)

Upon remand, ALJ Paul Yerian issued a partially favorable decision finding Plaintiff disabled beginning on July 17, 2014. (*Id.* at 717–34.) The Appeals Council affirmed the finding that Plaintiff was disabled as of July 17, 2014, but remanded the matter back to the ALJ to further consider Plaintiff's literacy for the time prior to July 17, 2014. (*Id.* at 742–45.) On February 14, 2018, ALJ Timothy Gates held a hearing and again found Plaintiff not disabled prior to July 17, 2014. (*Id.* at 574–95.) Following Plaintiff's written objections, the Appeals Council vacated ALJ Gates' decision and issued a new decision finding Plaintiff not disabled prior to July 17, 2014. (*Id.* at 542–58.) The Appeals Council's decision became the final decision of the Commissioner. (*Id.* at 539.)

Plaintiff filed this case on January 2, 2020 (ECF No. 3), and the Commissioner filed the administrative record on April 27 (ECF No. 7). Plaintiff filed

a Statement of Specific Errors (ECF No. 10), and the Commissioner responded (ECF No. 11). On September 15, 2020, the Magistrate Judge issued her Report and Recommendation. (ECF No. 13.) After a thorough analysis, the Magistrate Judge recommended affirming the Commissioner's non-disability finding. On September 29, Plaintiff timely filed an Objection to the Magistrate Judge's R&R. (ECF No. 14.) The Commissioner filed a Response to the Objection the next day. (ECF No. 15.)

### B. Relevant Record Evidence

#### 1. Hearing Testimony

Plaintiff, represented by counsel, appeared and testified at the administrative hearing upon remand from the Appeals Council. At the outset, ALJ Gates stated that he would focus the hearing on "the issue of literacy, and how that would affect the ability to work, how that would affect whether this individual could work, and . . . that although this individual graduated from high school, that might not be truly indicative of how well this individual would function cognitively" for the period of July 1, 2008 to July 16, 2014. (R. at 608.)

At the time of the hearing, Plaintiff was living with his father. (*Id.* at 610.) He has never lived alone. (*Id.* at 613.) He testified that he has a driver's license and is able to read several street signs. (*Id.* at 611.) He can spell the word "stop" but sometimes identifies other street signs by their shape and what symbols they contain. (*Id.* at 611–12.) He has paid for items in cash and understands the cost of gas as shown on the pump. (*Id.* at 614.) However, he generally does not shop alone. (*Id.* at 615.)

He testified that he received his high school diploma but was in special education classes. (*Id.* at 612, 629.) During high school, he was able to read between a first and second grade level, spell at a second grade level, and perform arithmetic at a third grade level. (*Id.* at 613–14.) He does not read books and testified that he cannot read beyond words like "cat," "dog," "stop," and "yield." (*Id.* at 613, 625–26.) He testified that he could not read when he was in school and that "[p]eople helped me out all the time" so he could pass. (*Id.* at 614.) Plaintiff testified that he "can't spell very good" but he can count. (*Id.*)

Plaintiff worked at Bloomingburg Spring and Wire for approximately seven years up until approximately 2008. (*Id.* at 615, 622.) One of his sisters also worked there and filled out the application for Plaintiff. (*Id.* at 615.) He testified that he mostly did manual labor; if he had to do any writing, his sister did it for him. (*Id.* at 616.) Plaintiff also worked as a shift manager for White Castle for a "couple years" starting in 2001. (*Id.* at 616–17.) He testified that he did not fill out schedules, other managers took care of that task. (*Id.* at 616.) But he did make deposits in the store safe and ran a cash register. (*Id.* at 617). He claims he did not do any reading but he did have to pass a test to get the manager position. (*Id.* at 617, 628.) Prior to White Castle, he worked at a plastics manufacturer called Primex for approximately one year. (*Id.* at 618.) Similar to Bloomingburg, a friend filled out the application for him. (*Id.*) Before Primex, Plaintiff "ran the line" at Sugar Creek Packing. (*Id.* at 619.)

Plaintiff's older sister, Rosetta Williams, also testified at the hearing. She

4

stated that she helped Plaintiff fill out job applications. (*Id.* at 632.) According to Ms. Williams, Plaintiff can only read three- or four-letter words and can only write his own name. (*Id.* at 633.) Plaintiff can add single digits but he cannot multiply or divide. (*Id.* at 638.) She testified that Plaintiff has a cell phone but does not know how to send or receive text messages. (*Id.* at 634.) She stated that at Bloomingburg, Plaintiff was always "messing the springs up" and had to go get someone to fix the machine so he could continue working. (*Id.* at 637). Ms. Williams handles Plaintiff's money but testified that Plaintiff can cook for himself. (*Id.* at 638.)

Finally, Vocational Expert George Coleman ("VE') testified. The VE classified Plaintiff's past work as a machine tender and fast food worker as unskilled, light strength level and his past work as a warehouse laborer as unskilled, medium strength level. (*Id.* at. 645–47.) The VE testified that Plaintiff's past employment as a fast food worker appeared to be accommodated work. (*Id.* at 649.)

In posing hypotheticals to the VE, the ALJ specifically asked him to keep in mind the testimony about Plaintiff's reading and writing capabilities. (*Id.*) The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC")[1] to the VE that required Plaintiff to perform at a light exertional level but required him to frequently climb ramps and stairs, balance, stoop, kneel, and crouch, occasionally crawl, never climb ladders, ropes, or scaffolds, perform simple, routine, and repetitive tasks in environments with infrequent changes in work duties and

---

[1] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

processes, and occasionally interact with supervisors, co-workers, and the general public. (*Id.* at 650.) The same hypothetical required that instructions be provided orally or by demonstration but did not require assembly line work and strict production quotas. (*Id.*) The VE testified that Plaintiff would be able to perform work as a motel hotel housekeeper, cafeteria attendant, and car wash attendant. (*Id.* at 651–52.)

The ALJ posed a second hypothetical with the same limitations as the first but in addition, Plaintiff would be off task greater than 10 percent of the time in an eight-hour workday. (*Id.* at 652.) The VE testified that there would not be work available to Plaintiff in that situation. (*Id.*) Similarly, it would be work-preclusive if Plaintiff had a hard time maintaining attention and concentration for 25 percent of the time. (*Id.* at 655.) The ALJ posed a third hypothetical with the same limitations as the first but in addition, Plaintiff would require instruction from a supervisor on task performance an average of once every two hours. (*Id.* at 653.) The VE testified that the ALJ was describing a sheltered type atmosphere or accommodated work setting, which is generally unavailable for competitive unskilled work. (*Id.* at 653, 657.) The VE explained that there would be no competitive unskilled jobs available if Plaintiff were unable to perform all the essential duties that were required of the position. (*Id.* at 659.)

### 2. Medical Opinion

On August 6, 2011, Plaintiff underwent a psychological evaluation by Dr. Taylor Groneck, a clinical psychologist at Scott Psychological Consultants, LLC. (*Id.*

6

at 414.) Plaintiff relayed to Dr. Groneck that he graduated from high school but only went to school for an hour on Fridays in the 12th grade. (*Id.* at 415.) He could not recall if he was in special education classes but stated that he had problems learning to read, spell, and complete math. (*Id.*) He stated that he got all Fs yet Dr. Groneck noted that he was still promoted to each subsequent grade. (*Id.*) Plaintiff denied having problems understanding instructions but indicated that he could not read well. (*Id.* at 416.) He described his typical day as sitting in a barn and drinking beer alone. (*Id.*)

Dr. Groneck observed that Plaintiff displayed normal mood and affect. (*Id.* at 417.) He noted that during the evaluation, Plaintiff had a difficult time understanding some questions and vocabulary, which had to be rephrased to ensure understanding. (*Id.*) Plaintiff's "phraseology, grammatical structure, and vocabulary suggest[ed] that he is of borderline intelligence." (*Id.*) Dr. Groneck observed that Plaintiff's short-term memory and working memory abilities were limited and his attention and concentration were marginally adequate likely because Plaintiff seemed to be preoccupied with physical pain. (*Id.*) Dr. Groneck noted that Plaintiff's arithmetic reasoning was marginally adequate as he could complete some addition, subtraction, multiplication, and division but his general reasoning abilities were limited. (*Id.* at 417.) Plaintiff correctly identified the President of the United States, but was unable to identify how many weeks are in a year. (*Id.*) Dr. Groneck opined that Plaintiff's general level of intelligence appeared to fall in the borderline range. (*Id.*) Dr. Groneck noted that although Plaintiff appeared able to understand and

follow most simple instructions, he would likely have significant difficulty understanding multi-step instructions due to limited cognitive abilities. (*Id.* at 421.) Dr. Groneck opined that Plaintiff's significant and chronic alcohol use may impair his judgment. (*Id.* at 420.)

Dr. Groneck administered the Wechsler Adult Intelligence Scale to Plaintiff. Plaintiff's Verbal Comprehension Index score was 66. (*Id.* at 417.) Dr. Groneck noted that Plaintiff's verbal comprehension subtests were extremely low range and above those of approximately one percent of his peers. (*Id.* at 418.) He opined that Plaintiff may have an undiagnosed learning disability. (*Id.*) Dr. Groneck noted that Plaintiff's non-reasoning abilities were in the average range and that his fluid reasoning abilities were less developed. (*Id.* at 418–19.) Plaintiff had a Full Scale IQ of 77. (*Id.* at 420.)

### 3.  Disability Report

In his initial Disability Report, Plaintiff indicated that he can speak and understand English, read and understand English, and write more than his name in English. (*Id.* at 242.) But he did note that he "can't read very well." (*Id.* at 243.) Plaintiff also indicated that he completed the 12th grade. (*Id.* at 244.) In listing his job at White Castle, Plaintiff reported that he supervised three people and was a lead worker. (*Id.* at 269.) Later in the Report, he stated that he can count change, but does not pay bills, handle a savings account, or use a checkbook because he has no money, no savings, and cannot read or write. (*Id.* at 281.) He indicated that he cannot follow written instructions because he cannot read, but he follows spoken

8

instructions "pretty good." (*Id.* at 283.)

### 4. School Records

Plaintiff's school records confirm that he had an individualized education plan in the 10th grade and was enrolled in special education classes in at least the 11th grade. (*Id.* at 930, 936.) While he received some failing grades in junior high, Plaintiff received grades of mostly Cs and Ds between 9th and 11th grade. (*Id.* at 932, 948.) Plaintiff was enrolled in only four credits of work study his senior year of high school. (*Id.* at 932.) His school records do not indicate that he received his high school diploma. (*Id.* at 930.)

### C. Appeals Council Decision

The Magistrate Judge accurately described the Appeals Council's decision. (*See* R&R, 3–6, ECF No. 13.) At step four of the sequential process,[2] the Appeals

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
> 2. Does the claimant suffer from one or more severe impairments?
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

9

Council set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the Appeals Council finds that the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567 and 416.967 except the claimant could not climb ladders ropes, or scaffolds, could occasionally crawl, could frequently climb ramps and stairs, balance, stoop, kneel, and crouch. He could perform simple, routine, repetitive tasks, in an environment with infrequent changes in work duties or processes. He could occasionally interact with supervisors, coworkers, and the general public. He could not perform assembly line work or work with strict production quotas.

(R. at 548–49.)

In affording Dr. Groneck's opinion "moderate weight," the Appeals Council explained:

> Dr. Groneck is a psychologist, with knowledge in the evaluation, diagnosis, and treatment of mental conditions. Furthermore, the consultative examiner observed, interviewed, and evaluated the claimant in a clinical setting. Nonetheless, the consultative examiner has no treating relationship with the claimant. As such, the opinions offered are based solely on the documented examination findings at the time of contact and are not definitive assessments of the nature of claimant's impairments throughout the course of treatment. Consequently, the Appeals Council has not simply adopted the consultative examiner's opinions and remarks. The Appeals Council has instead, considered the consultative examiner's findings and statements in light of the record of evidence as a whole.
>
> As referenced in discussing the objective medical evidence of record, this source's opinions are partially consistent with the record as a whole. In support of this opinion, Dr. Groneck noted normal mood and affect, limited short term and working memory, marginally adequate arithmetic reasoning, limited general reasoning, and limited [judgment] (Exhibit 5F, page 5). He also performed intellectual testing, which resulted in a full scale IQ of 77, but verbal comprehension of 66 (Exhibit 5F, page 5). Further, these opinions demonstrate significant supportability as the consultative examiner documented numerous medical facts and non-medical evidence in the record relied upon in

> formulating their conclusions. However, Dr. Groneck's finding that the claimant had only marginal attention and concentration is not supported, because it is based on an observation that the claimant was preoccupied with pain (Exhibit 5F, page 5). As a consultative examiner, Dr. Groneck only met with the claimant once, and therefore, had no way of knowing if that pain was ongoing, something unique to that day, or whether it might be adequately treated with proper medication. For the above reasons, the Appeals Council gives moderate weight to the opinions of the consultative examiner.

(*Id.* at 553–54.)

The Appeals Council then moved to specifically discuss Plaintiff's literacy and education level. It found, based on the record, that Plaintiff "has a limited education and is able to communicate in English." (*Id.* at 555.) The Appeals Council elaborated:

> In his disability report, the claimant states he can read and understand English, and can write more than his name in English (Exhibit 2E, page 1). He also states he completed the 12th grade in 1984 (Exhibit 2E, page 3). An administrator from his school stated that his transcript showed he did not graduate and was in all special education classes (Exhibit 27E, page 2). The claimant alleged that he could not read or write very well, but did not allege that he was illiterate (Exhibit 9E, page 9). The claimant testified that he can read traffic signs, and was able to spell the word "stop" (Hearing Recording, 9:52:25). The claimant testified that past work included that of a shift manager at White Castle, which included responsibility for safe deposits, suggesting at least some ability to perform basic reading and writing (Hearing Recording, 9:58:55). He further testified that the job also involved working on a cash register, again suggesting a basic ability to read. Evidence of record shows the claimant reported working at a factory where he ran an assembly line (Exhibit 20E). The claimant's high school records do not indicate he was completely incapable of reading and writing (see, e.g., Exhibit 30E). The record suggests an ability to read and write to a degree sufficient to be considered at least literate under Agency standards (20 CFR 404.1564 and 416.964). The regulations state we consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his name. An illiterate person generally has little or no formal schooling. Given the record of the claimant's functioning, the evidence as a whole does not support

11

finding the claimant illiterate under the agency's rule.

(*Id.* at 555–56.)

Relying on testimony from the VE, the Appeals Council concluded that during the relevant timeframe, Plaintiff could perform the requirements of a hotel housekeeper, cafeteria attendant, and car wash attendant. (*Id.* at 557.) Accordingly, the Appeals Council found that Plaintiff was not disabled, as defined under the Social Security Act, from July 1, 2008, through July 16, 2014. (*Id.*)

## II.  STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).

12

## III. ANALYSIS

In his Statement of Specific Errors, Plaintiff asserts one assignment of error, which also forms the basis of his Objection to the Magistrate Judge's R&R.[3] Plaintiff contends that the Appeals Council failed to properly evaluate Plaintiff's literacy in reaching its decision that Plaintiff was not disabled prior to June 17, 2014. He argues that the Magistrate Judge erred when she determined that the Appeals Council's decision was supported by substantial evidence.

The applicable regulation provides:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little to no formal schooling.

20 C.F.R. § 416.964(b)(1). While the regulations acknowledge that the numerical grade level completed may not be representative of a claimant's actual educational abilities, "[w]e generally consider that a 7th grade through the 11th grade level of formal education is a limited education." *Id.* § 416.964(b)(3) A limited education means "ability in reasoning, arithmetic, and language skills but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." *Id.* The ultimate question is "'whether [Plaintiff] is so deficient in ability to read and write that he cannot obtain even an unskilled job.'" *Smith v. Comm'r of Soc. Sec.*, No. 13-12759, 2015 WL 899207, at *23

---

[3] Plaintiff acknowledges that the Magistrate Judge was correct in noting that he erroneously referred to the ALJ's decision in his Statement of Specific Errors instead of the Appeals Council's decision.

13

(E.D. Mich. Mar. 3, 2015) (quoting *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). There is substantial evidence in the record to support the Appeals Council's decision answering that question in the negative.

After carefully reviewing the record *de novo*, this Court finds the Magistrate Judge's assessment of the Appeals Council's decision as it pertains to Plaintiff's literacy proper and adopts it here:

> To begin, the Appeals Council properly considered Plaintiff's educational records. It noted that, while Plaintiff indicated he completed the twelfth grade in 1984, an administrator from his school stated his transcript showed he did not graduate and was enrolled in all special education classes. (Tr. 555). *See* 20 C.F.R. § 416.964(b)(3) (noting that a seventh through eleventh grade of formal education is generally considered a limited education). But the Appeals Council did not rely solely on the numerical grade level Plaintiff completed. It relied also on Plaintiff's educational records, concluding that they did "not indicate he was completely incapable of reading and writing[,]" but rather reflected "an ability to read and write to a degree sufficient to be considered at least literate under Agency standards." (Tr. 556). Upon review of Plaintiff's cumulative student record, the Court notes that, while Plaintiff received failing grades in several classes, including English and Reading, he also received some passing grades in these classes. (*See* Tr. 948); *see also Inman v. Astrue*, No. CIV.A.08-16-JMH, 2009 WL 1663036, at *3 (E.D. Ky. June 15, 2009) (internal citations omitted) ("Although Plaintiff did poorly in school and obtained low scores on achievement testing, his grades and scores do not establish that he was illiterate.").
>
> Importantly, "[n]o examiner concluded Plaintiff was illiterate." *Inman*, 2009 WL 1663036, at *3; *cf. Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450 (6th Cir. 1990) (noting that the record was "replete with evidence that [plaintiff] [was] illiterate," including an opining source's diagnosis of illiteracy). Rather, the sole opining source on Plaintiff's intellectual abilities found that Plaintiff "appears [able] to follow most simple instructions" but would "have significant difficulty with multi-step instructions due to limited cognitive abilities." (Tr. 421). So the Appeals Council limited Plaintiff, accordingly, to simple, routine, repetitive tasks. *See, e.g., Abrams v. Astrue*, 637 F. Supp. 2d 520, 526 (E.D. Ky. 2009) (noting psychologist's opinion that plaintiff, who had

14

borderline intellectual functioning, a learning disorder, and read below the third grade level, would struggle with carrying out detailed instructions, but could understand and carry out simple instructions).

Relatedly, in reaching its ultimate decision, the Appeals Council relied on the VE's hearing testimony to conclude that Plaintiff could perform the requirements of the unskilled jobs of hotel housekeeper, cafeteria attendant, and car wash attendant. (Tr. 557). While the ALJ did not expressly determine whether Plaintiff was illiterate, he ensured the VE understood Plaintiff's limited ability to read and write. Specifically, at the hearing, the ALJ noted, in the presence of the VE, that Plaintiff's test scores showed that, in the tenth grade, Plaintiff read at the 1.5 grade level and spelled at the 2.4 grade level. (Tr. 613–14). Further, when questioning the VE, the ALJ emphasized these difficulties:

> Q. I also want you to keep in mind the fact that he - - although he has a high school diploma, you heard the testimony about the level of reading - -
> A. Yes.
> Q. - - and writing skills? You've heard that testimony. I want you to consider that - -
> A. Okay.

(Tr. 649–50). Relying on the VE's testimony, the Appeals Council concluded that Plaintiff could perform these unskilled jobs and limited him to simple, routine, repetitive tasks, in an environment with infrequent changes in work duties or processes. (Tr. 548–49).

Moreover, the Appeals Council noted that, in his disability report, Plaintiff stated he can read and understand English and can write more than his name in English. (Tr. 555). It also noted, while Plaintiff "alleged he could not read or write very well," he "did not allege that he was illiterate." (*Id.*). Plaintiff also "testified that he can read traffic signs, and was able to spell the word 'stop.'" (Tr. 555); *see, e.g.*, *Helmker*, 2015 WL 7721225, at *6 (noting that plaintiff could "read road signs," despite having "substantial difficulties in this area"). Additionally, Plaintiff's sister testified that he could read three and four-letter words. (Tr. 633).

Furthermore, despite Plaintiff's contention that his past jobs did not require him to read or write, (*see* Doc. 10 at 9), the Appeals Council properly took into account Plaintiff's work history in light of his ability to read and write. *See, e.g.*, *Watt*, 2016 WL 6651855, at *4 (collecting cases) (noting that the ALJ properly considered that plaintiff's "alleged

reading and writing difficulties did not prevent him from" working as a grocery clerk and parts assembler at substantial gainful activity level); *Marrisett v. Colvin*, No. 2:14-CV-222, 2015 WL 3626995, at *2 (E.D. Tenn. June 10, 2015) (concluding that plaintiff was not illiterate where he "worked for many years in a variety of jobs"). Specifically, the Appeals Council noted that Plaintiff "testified that past work included that of a shift manager at White Castle, which included responsibility for safe deposits, suggesting at least some ability to perform basic reading and writing." (Tr. 556). Plaintiff "further testified that the job also involved working on a cash register, again suggesting a basic ability to read." (Tr. 556). Additionally, the Appeals Council noted that the "[e]vidence of record shows [Plaintiff] reported working at a factory where he ran an assembly line." (*Id.*).

(R&R, 9–12.)

While Plaintiff argues that there is evidence in the record to support that Plaintiff is illiterate, "[t]he decision of [the Appeals Council] is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the [Appeals Council]." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "[T]he standard here is whether the [Appeals Council's] decision is supported by substantial evidence—not whether evidence also supported an alternative finding." *Watt v. Colvin*, No. 15-12833, 2016 WL 6651855, at *5 (E.D. Mich. July 13, 2016) (recognizing that the plaintiff "correctly point[ed] out that the record contain[ed] evidence that he has trouble reading and writing" but that "substantial evidence support[ed] the ALJ's finding that [the plaintiff] was not illiterate"); *see also Smith*, 2015 WL 899207, at *23 (finding that, despite plaintiff's very low reading levels, substantial evidence supported the ALJ's conclusion that plaintiff was not illiterate).

16

Accordingly, the Court finds, as did the Magistrate Judge, that there is substantial evidence to support the Appeals Council's decision that Plaintiff was not illiterate and thus not disabled between July 1, 2008 and July 16, 2014. Plaintiff's Objection is **OVERRULED**.

## IV. CONCLUSION

Based upon the foregoing, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, after a *de novo* determination of the record, this Court concludes that Plaintiff's objection to the Report and Recommendation of the Magistrate Judge is without merit. The Court, therefore, **OVERRULES** Plaintiff's Objection (ECF No. 14), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 13), and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**